**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HANNA KAYALI and | ) | |
| MOHAMMED A. DOLEH, | ) | |
| individually and on behalf of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | JURY DEMANDED |
| ROBINHOOD FINANCIAL, LLC, | ) | |
| ROBINHOOD SECURITIES, LLC, | ) | |
| ROBINHOOD MARKETS, INC., | ) | |
| CITADEL ENTERPRISE AMERICAS, LLC, | ) | |
| TD AMERITRADE, INC., | ) | |
| THE CHARLES SCHWAB CORPORATION, | ) | |
| CHARLES SCHWAB & CO. INC.,  and | ) | |
| MELVIN CAPITAL MANAGEMENT, LP | ) | |
| | ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

NOW COME Plaintiffs, HANNA KAYALI, (hereinafter "Kayali" or "Plaintiff"), and

MOHAMMED A. DOLEH, (hereinafter "Doleh" or "Plaintiff"),  (collectively "Plaintiffs")

individually and on behalf of the proposed class, by and through their attorneys, Blaise &

Nitschke, P.C., and submit their class action complaint against ROBINHOOD FINANCIAL,

LLC; ROBINHOOD SECURITIES, LLC; ROBINHOOD MARKETS, INC; CITADEL

ENTERPRISE AMERICAS, LLC; TD AMERITRADE, INC.; THE CHARLES SCHWAB

CORPORATION; CHARLES SCHWAB & CO., INC.; and MELVIN CAPITAL

MANAGEMENT, LP (hereinafter collectively referred to as "Defendants"). In furtherance

whereof, Plaintiffs state as follows:

## NATURE OF THE CASE

This is a class action based upon Defendants' intentional and willful restriction for certain securities including but not limited to Naked Brand Group Ltd. ("NAKD"), Nokia Corporation ("NOK"), and AMC Entertainment Holdings, Inc. ("AMC"), from its trading platform thereby dispossessing the retail investors of the ability to invest in the free market.

## PARTIES

1.      Plaintiff HANNA KAYALI is a U.S. citizen who at all times mentioned in this Complaint resided in the Northern District of Illinois.

2.      Plaintiff MOHAMMED A. DOLEH is a U.S. citizen who at all times mentioned in this Complaint resided in the Northern District of Illinois.

3.      Defendant ROBINHOOD FINANCIAL, LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial, LLC is registered as a broker-dealer with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial, LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

4.      Defendant ROBINHOOD SECURITIES, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial, LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

5.      Defendant ROBINHOOD MARKETS, INC. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial, LLC and Robinhood Securities, LLC. The above-named corporate defendants herein referred to collectively as "Robinhood."

6.      Defendant CITADEL ENTERPRISE AMERICAS, LLC is a Delaware corporation with its principal place of business at 131 South Dearborn Street, Chicago, IL 60603. Citadel Enterprises Americas is the largest customer of Robinhood.

7.      Defendant MELVIN CAPITAL MANAGEMENT LP is a Delaware corporation with its principal place of business at 535 Madison Avenue, 22nd Floor, New York, New York, 10022. Citadel Enterprise Americas, LLC is a hedge fund that owns Melvin Capital Management LP.

8.      Defendant TD AMERITRADE, INC., is a New York corporation with its principal place of business registered to do business in Illinois, but not in good standing.

9.      Defendant THE CHARLES SCHWAB CORPORATION is a Delaware corporation with its principal place of business at 211 Main Street, San Francisco, CA 94105.

10.      Defendant CHARLES SCHWAB & CO. INC. is a California corporation with its principal place of business at 211 Main Street, San Francisco, CA 94105.

11.      As of October 2020, The Charles Schwab Corporation acquired TD Ameritrade.

12.      The above-named corporate defendants herein referred to collectively as "TD Ameritrade."

13.     Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of the said acts.

## JURISDICTION AND VENUE

14.     This Court has Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under the Constitution, laws, or treaties of the United States.

15.     Venue is appropriate in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this judicial district.

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

## STATEMENT OF FACTS

17.     Robinhood is a FINRA regulated broker-dealer, registered with the U.S. Securities and Exchange Commission, and is a member of the Securities Investor Protection Corporation. The company's revenue comes from three main sources: interest earned on customers' cash balances, selling order information to high frequency traders, and margin lending. The company has 13 million users as of its most recent SEC filing.

18.     According to its "About Us" section on its website, Robinhood believes that the financial system should be built to work for everyone. *About Us*, ROBINHOOD (2021), https://robinhood.com/us/en/about-us/ (last visited January 28, 2021).

19.     Robinhood prides itself as being "…on a mission to democratize finance for all." *Id.*

20.     Citadel Enterprise Americas, LLC is one of the largest clients of Robinhood, and on information and belief, Citadel reloaded their short sale positions before they told Robinhood to stop trading stocks in GameStop Corp. ("GME").

21.     TD Ameritrade is a broker that offers an electronic trading platform for the trade of financial assets including common stocks, preferred stocks, futures contracts, exchange-traded funds, options, cryptocurrency, mutual funds, and fixed income investments.

22.     TD Ameritrade provides investing and trading services for 11 million client accounts that total more than $1 trillion in assets, and custodial services for more than 6,000 independent registered investment advisors.

23.     On or around January 26, 2021 stocks in Naked Brand Group Ltd. ("NAKD") began to rise.

24.     On or around January 22, 2021 stocks in Nokia Corporation, ("NOK") began to rise.

25.     On or around January 26, 2021 stocks in AMC Entertainment Holdings, Inc. ("AMC") began to rise.

26.     At these times, Robinhood and TD Ameritrade allowed retail investors to trade NAKD, NOK, and AMC on the open market.

27.     On or about January 28, 2021, in an effort to restrict the free market, Robinhood and TD Ameritrade deprived its individual investor customers of the ability to transact on their platforms for certain securities including NAKD, NOK, and AMC.

28.     Meanwhile, hedge funds and institutional investors may continue to trade as normal.

29.      Robinhood explicitly stated, "We continuously monitor the markets and make changes where necessary. In light of recent volatility, we are restricting transactions for certain securities to position closing only, including $AAL, $AMC, $BB, $BBBY, $CTRM, $EXPR, $GME, $KOSS, $NAKD, $NOK, $SNDL, $TR, and $TRVG. We also raised margin requirements for certain securities. *Keeping Customers Informed Through Market Volatility*, ROBINHOOD (January 28, 2021), https://blog.robinhood.com (last visited January 28, 2021).

30.      TD Ameritrade states, "In the interest of mitigating risk for our company and clients, we have put in place several restrictions on some transactions in $GME [GameStop], $AMC [AMC Theaters] and other securities." Mark DeCambre, *GameStop and AMC Trading Restricted by TD Ameritrade, Schwab, Robinhood Others*, MSN.COM (January 28, 2021), https://www.msn.com/en-us/money/topstocks/gamestop-amc-trading-is-now-being-restricted-at-td-ameritrade-schwab/ar-BB1d9dmv (last visited January 28, 2021).

31.      On information and belief, Robinhood and TD Ameritrade's actions were done purposefully and knowingly to manipulate the market for the benefit of hedge funds and institutional investors.

32.      In short, certain securities including GME, NAKD, NOK, and AMC (collectively, "the Stocks") may only be sold on the platforms now, which will necessarily cause of the price of those stocks to fall or stagnate.

33.      A notification appeared on Robinhood telling users that they could close their position on GME's stock but not buy any additional shares.

34.      Plaintiff Kayali purchased AMC, NAKD, and NOK on January 27, 2021.

35.      On the morning of January 28, 2021, Plaintiff Kayali sold her interest in NAKD.

36.     On the morning of January 28, 2021, Plaintiff Kayali used her Robinhood app, searched for AMC and NOK, and found they were unavailable. The stock did not even appear, although AMC and NOK are publicly traded companies.

37.     Plaintiff Doleh purchased AMC stock on January 27, 2021.

38.     On the morning of January 28, 2021, Plaintiff Doleh used his TD Ameritrade app, searched for AMC, and found it was unavailable. The stock did not even appear, although AMC is a publicly traded company.

39.     Thus, Plaintiffs, like all others similarly situated lost out on all earning opportunities.

## CLASS ACTION ALLEGATIONS

40.     Plaintiffs bring this claim individually and on behalf of the following putative class:

**All  Robinhood and TD Ameritrade customers within the United States.**

41.     The Class ("Class") is so numerous that joinder of all individual members (individually, "Class Member" or collectively, "Class Members") in one action would be impracticable, given the expected Class size and modest value of individual claims.

42.     There are more than 20 million Robinhood and TD Ameritrade customers.

43.     Class Members can be identified through Defendants' records.

44.     Plaintiffs' claims are typical of the claims of the Class Members, as they are based on the same legal theory and arise from the same unlawful conduct.

45.     There are common questions of law and fact affecting Class Members, which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

a.   Whether and to what extent Defendants have deprived Class Members of earning opportunities;

b.   Whether and to what extent Defendants have deprived Class Members of their right to freely trade on the open market;

c.   Whether and to what extent Defendants conspired to deprive Class Members of their ability to freely trade;

d.   Whether Defendants violated the Sherman Antitrust Act of 1890;

e.   Whether Defendants violated Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505;

f.   Whether Defendants breached their fiduciary duties to their customers by failing to provide adequate access to financial services;

g.   Whether Defendants were unjustly enriched by their conduct;

h.   Whether Defendants are in breach of their contracts with Class Members in connection with their failure to provide financial services;

i.   Whether Defendants violated consumer protection laws in failing to disclose that its services would not include the ability to trade certain securities including GME, AMC, NAKD, and NOK, for substantial periods of time;

j.   Whether Class members are entitled to actual damages, statutory damages, and/or punitive damages as a result of Defendants' wrongful conduct;

k.   Whether Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of their lost earning opportunities; and

l.   Whether or not Class Members are entitled to Declaratory Relief.

46.     Plaintiffs will fairly and adequately represent the Class Members. Plaintiffs have no interests that conflict with the interests of Class Members. Plaintiffs have retained counsel experienced in handling class actions. Neither Plaintiffs nor his or her counsel have any interests that might cause them not to pursue these claims vigorously.

47.     This action should be maintained as a class action because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

<u>**COUNT I**</u>
**Unlawful Combination and Conspiracy in Restraint of Trade in Violation of
Section 1 of the Sherman Act
(All Defendants)**

48.     Plaintiffs re-allege and incorporate paragraphs 1-47 of this Complaint as though fully set forth herein.

49.     On information and belief, the Defendants combined, conspired, or contracted to contemporaneously decide upon and enact a coordinated prohibition on the purchase of shares of the Stocks by Plaintiffs.

50.     The Defendants have prohibited and continue to prohibit purchases of shares of the Stocks by Plaintiffs in an unreasonable restraint of trade in the stock market. Despite prohibiting purchases of shares of the Stocks, the Defendants have continued to allow Plaintiffs to sell shares of the Stocks.

51.     As a result of Defendants contract combination, or conspiracy, the unreasonable restraint of trade in the stock market has caused injury to Plaintiffs by prohibiting their purchase of shares of the Stocks. Despite this prohibition, Defendants Robinhood and TD Ameritrade ("Trading Platform Defendants") allow Plaintiffs to sell shares of the Stocks on their platforms.

## COUNT II
### Attempted Monopolization of the Stock Market in Violation of
### Section 2 of the Sherman Act
### (Against All Defendants)

52.     Plaintiffs re-allege and incorporate paragraphs 1-51 of this Complaint as though fully set forth herein.

53.     By prohibiting Plaintiffs from purchasing the Stocks but not from selling the Stocks, Defendants engaged in and continue to engage in exclusionary conduct that is deleterious to consumers and to the anticompetitive benefit of the Defendants. Defendants engaged in and continue to engage in anticompetitive conduct.

54.     Through the continued anticompetitive conduct of excluding Plaintiffs from the stock market as competitors by prohibiting Plaintiffs purchase of the Stocks, Defendants manifested and continue to manifest a specific intent to monopolize. Defendants' coordinated prohibition of Plaintiffs' purchase of the Stocks demonstrates Defendants' specific intent to monopolize the stock market.

55.     Upon information and belief, the Defendants collectively control a majority share of trading within the stock market. Defendants' coordinated prohibition of Plaintiff's purchase of the Stocks is likely to increase Defendants' market share within the stock market. As a result, Defendants' anticompetitive conduct poses a dangerous probability of achieving monopoly.

## COUNT III
### Violation of the Illinois Consumer Fraud and Deceptive Business Practice
### 815 ILCS 505/1, *et seq*.
### (Against Trading Platform Defendants)

56.     Plaintiffs re-allege and incorporate paragraphs 1-55 of this Complaint as though fully set forth herein.

57.     That at all times relevant herein, there existed in full force and effect the

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq*. (hereinafter

"The Act").

58.     The Act makes it unlawful to employ:

> "[u]nfair methods of competition and unfair or deceptive acts or practices,
> including but not limited to the use or employment of any deception fraud,
> false pretense, false promise, misrepresentation or the concealment,
> suppression or omission of any material fact, with intent that others rely
> upon the concealment, suppression or omission of such material fact … in
> the conduct of any trade or commerce."

815 ILCS 505/2.

59.     As detailed throughout Plaintiffs' Complaint, Trading Platform Defendants have

committed deceptive practices by restricting Plaintiffs' purchase, but not sale, of the Stocks, in

violation of Customer Agreements between Plaintiffs and Trading Platform Defendants.

60.     As a proximate cause of Trading Platform Defendants deceptive business

practices as alleged herein, Plaintiffs have suffered an injury in fact having lost or deprived of

money or property in an amount to be proven at trial. Plaintiffs were unable to timely execute

trades in their financial interests because of Defendants' deceptive practices.

61.     Trading Platform Defendants' unfair, unlawful, or fraudulent acts and practices

present a continuing threat to Plaintiffs and to members of the public in that these acts and

practices are ongoing and are harmful and disruptive to consumers.

<u>**COUNT IV**</u>
**Breach of Contract**
**(Against Trading Platform Defendants)**

62.     Plaintiffs re-allege and incorporate paragraphs 1-61 of this Complaint as though

fully set forth herein.

63.     In order to use the Defendants' Trading Platform, potential customers must enter

into a Customer Agreement with the Trading Platform Defendants.

64.     Plaintiffs and all class members entered into a Customer Agreement with one or more of the Trading Platform Defendants.

65.     Trading Platform Defendants breached their Customer Agreements by, among other things,

    a.  failing to disclose that their platforms would restrain the purchase but not sale of the Stocks;

    b.  knowingly putting their customers at a disadvantage relative to other stock traders by other means;

    c.  failing to adequately explain the decision to prohibit the purchase of the Stocks;

    d.  failing to provide access to their services concerning the Stocks;

    e.  prohibiting Plaintiffs from performing under the Agreements;

    f.  failing to comply with all applicable legal, regulatory, and licensing requirements; and,

    g.  failing to exercise trades and actions requested by customers.

66.     As such, Trading Platform Defendants breached their Agreements with Plaintiffs and continue to breach these Agreements.

67.     Trading Platform Defendants' failure to perform under these Agreements has resulted in damages and losses to Plaintiffs and continues to expose them to harm. These losses reflect damages to Plaintiffs in an amount to be determined at trial.

## COUNT V
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (Against Trading Platform Defendants)

68.     Plaintiffs re-allege and incorporate paragraphs 1-67 of this Complaint as though fully set forth herein.

69.     Plaintiffs entered into Agreements with Trading Platform Defendants to open trading accounts. Plaintiffs agreed to Trading Platform Defendants' Terms and Conditions by using Trading Platform Defendants' websites and trading platforms.

70.     Plaintiffs fulfilled their obligations under these contracts by adhering to their terms and using Trading Platform Defendants' services through their websites and trading platforms.

71.     Trading Platform Defendants were obligated to provide the trading services required under those contracts at all times, including but not limited to, purchases of shares in the Stocks.

72.     When initially signing up for the trading platforms, Plaintiffs and all those similarly situated could and did purchase shares in the Stocks.

73.     Trading Platform Defendants' unfairly interfered with the rights of Plaintiffs to receive the benefit of their Agreements with Trading Platform Defendants by, among other things:

    a.  Failing to provide the services necessary to carry out purchases of shares in the Stocks;

    b.  Failing to provide certain trading services whatsoever;

    c.  Failing to inform individuals in a timely manner of the drastic changes in trading abilities on Trading Platform Defendants' trading platforms; and,

    d.   Prohibiting Plaintiffs from purchasing shares in the Stocks for the Trading Platform Defendants' pecuniary interests and not disclosing those interests to Plaintiffs.

74.    Trading Platform Defendants' conduct has caused Plaintiffs harm, losses, and damages. These losses reflect damages to Plaintiffs in an amount to be determined at trial.

**COUNT VI**
**Negligence**
**(*In the Alternative*, Against Trading Platform Defendants)**

75.    Plaintiffs re-allege and incorporate paragraphs 1-74 of this Complaint as though fully set forth herein.

76.    Trading Platform Defendants had a duty to exercise reasonable care in conducting and facilitating transactions for its customers.

77.    Trading Platform Defendants had a duty to exercise reasonable care in providing trades on the free, open market for its customers.

78.    Trading Platform Defendants unlawfully breached their duties by, among other things:

    a.   Prohibiting the purchase of shares of the Stocks without notice;

    b.   Failing to provide financial services related to the Stocks; and

    c.   Failing to notify customers in a timely manner of the restrictions placed upon purchases of shares of the Stocks.

79.    Trading Platform Defendants' conduct as set forth in this Complaint was want of even scant care, and their acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Their actions breach any duty of care to their customers but are also inconsistent with the standard of care expected from similar firms in the open market.

80.     Upon information and belief, no institutions similar to Trading Platform Defendants have ever prohibited customers from purchasing a specific share of a specific security prior to the acts and omissions described in this Complaint.

81.     Trading Platform Defendants essentially abandoned their customers altogether by prohibiting the purchase of shares of the Stocks, a standard of care so far below what is required for a business engaging in time-sensitive trading services that it amounts to a complete abandonment and abdication of their duties.

82.     Trading Platform Defendants' grossly negligent and wrongful breaches of their duties owed to Plaintiffs proximately caused losses and damages that would not have occurred but for Trading Platform Defendants' gross breaches of their duties of due care. These losses reflect damages to Plaintiffs in an amount to be determined at trial.

**COUNT VII**
**Breach of Fiduciary Duty**
**(Against Trading Platform Defendants)**

83.     Plaintiffs re-allege and incorporate paragraphs 1-82 of this Complaint as though fully set forth herein.

84.     As licensed providers of financial services, Trading Platform Defendants at all times relevant herein were fiduciaries to Plaintiffs and owed them the highest good faith and integrity in performing their financial services on the behalf of Plaintiffs. Trading Platform Defendants also acted as fiduciaries to each and every customer who agreed to their Customer Agreements.

85.     Trading Platform Defendants breached their fiduciary duties to Plaintiffs by, among other things:

a.   Failing to disclose in a timely manner that their platforms planned to prohibit purchases of shares of the Stocks;

b.   Prohibiting purchases of shares of the Stocks for Defendants' pecuniary benefits;

c.   Failing to provide access to their financial services in a timely manner;

d.   Failing to comply with all applicable legal, regulatory, and licensing requirements; and

e.   Failing to exercise trades and actions requested by customers in a complete and timely manner.

86.     Trading Platform Defendants' conduct has caused Plaintiffs' harm, losses, and damages and continues to expose Plaintiffs to harm because Trading Platform Defendants continue to breach their fiduciary duties. These losses reflect damages to Plaintiffs in an amount to be determined at trial.

**COUNT VIII**
**Civil Conspiracy**
**(Against All Defendants)**

87.     Plaintiffs re-allege and incorporate paragraphs 1-86 of this Complaint as though fully set forth herein.

88.     Upon information and belief, Defendants knowingly and intentionally agreed to prohibit the purchase of shares of the Stocks on the Trading Platform Defendants trading platforms for the pecuniary benefits of the Defendants. This agreement and subsequent concerted action comprise a common scheme among Defendants.

89.     This common scheme represents a combination for the purpose of accomplishing the unlawful act of the restraint of free trade in the stock market by concerted action for the pecuniary benefits of the Defendants.

90.     In furtherance of this unlawful agreement, Trading Platform Defendants committed the tortious act of violating the Illinois Consumer Fraud and Deceptive Practices Act.

91.     Defendants' acts in furtherance of this unlawful agreement has caused Plaintiffs' harm, losses, and damages. These losses reflect damages to Plaintiffs in an amount to be determined at trial.

## COUNT IX
### Action for Temporary Restraining Order ("TRO") and Preliminary and Permanent Injunction (Against Trading Platform Defendants)

92.     Plaintiffs re-allege and incorporate paragraphs 1-91 of this Complaint as though fully set forth herein.

93.     Plaintiffs seek the entry of a temporary restraining order and a preliminary and permanent injunction to return the Parties to, and to maintain the status quo that existed and was to exist among the Parties, including but not limited to:

a.   requiring that the Trading Platform Defendants immediately allow the purchase of shares of the Stocks on their trading platforms;

b.   requiring that the Trading Platform Defendants immediately issue a public statement on their websites and to their users regarding their plan to cease and desist the prohibition of the purchase of shares of the Stocks.

94.     Injunctive relief to return the Parties to the status quo ante is appropriate under the circumstances because Trading Platform Defendants are restricting the purchase of shares of the Stocks.

95.     The restriction of the purchase of shares of securities cannot be remedied by an award of money damages or through the granting of other relief.

96.     Plaintiffs have suffered, and will continue to suffer, immediate and irreparable harm by reason of the conduct described above. Such immediate and irreparable harm includes, but is not limited to, the inability to execute trades in the Plaintiffs' pecuniary interests.

97.     Plaintiffs do not have an adequate remedy at law to protect and re-establish the rights which currently have been, and continue to be, violated by Trading Platform Defendants' actions. Plaintiffs' rights cannot be obtained except through injunctive relief returning the Parties to the status quo ante.

98.     Entering the injunctive relief the Plaintiffs' are seeking will cause the Trading Platform Defendants no economic harm. Defendants have no right, whatsoever, to restrain the lawful free trade of particular securities.

99.     Trading Platform Defendants will suffer no loss, economic or otherwise, if compelled to act in accordance with the law, by refraining from restraining the lawful free trade of shares of the Stocks.

100.     There is a reasonable likelihood that the Plaintiffs will succeed on the merits of their claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, HANNA KAYALI and MOHAMMED A. DOLEH, individually and on behalf of the proposed class, by and through their attorneys, Blaise & Nitschke, P.C., pray for relief as follows:

      a.  For an Order certifying this action as a class action and appointing Plaintiffs and their Counsel to represent the Class;

   b.  Enter an immediate injunction requiring Robinhood and TD Ameritrade to

       reinstatement NOK, NAKD, and AMC on their trading platforms;

   c.  Enter an award for Plaintiffs to be determined;

   d.  Enter an award of attorneys' fees and costs;

   e.  Enter an award for punitive damages for the willful, wanton, and reckless

       behavior of Defendants; and

   f.  Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all matters so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that Defendants take affirmative steps to preserve all

recordings, data, documents, and all other tangible things that relate to Plaintiffs and the putative

class and the events described herein. These materials are likely very relevant to the litigation of

this claim. If Defendants are aware of any third party that has possession, custody, or control of

any such materials, Plaintiffs demands that Defendant request that such third party also take

steps to preserve the materials. This demand shall not narrow the scope of any independent

document preservation duties of the Defendants.

## NOTICE OF LIEN AND ASSIGNMENT

All rights relating to attorneys' fees have been assigned to counsel.

Dated: January 28, 2021                         Respectfully submitted,
                                                HANNA KAYALI AND
                                                MOHAMMED DOLEH,
                                                individually and on behalf of others
                                                similarly situated (collectively
                                                "Their").

                                        By:     /s/ *Lana B. Nassar*

19

Lana B. Nassar, ARDC No. 6319396
Blaise & Nitschke, P.C.
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448-6602
F: (312) 803-1940
lnassar@blaisenitschkelaw.com
*One of their attorneys*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on the 28th day of January, 2021, she caused the foregoing instrument to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois using the CM/ECF system.

/s/ *Lana B. Nassar*
Lana B. Nassar

**Blaise & Nitschke, P.C.**
123 N. Wacker Drive, Suite 250
Chicago, Illinois 60606
T: (312) 448-6602
F: (312) 803-1940
lnassar@blaisenitschkelaw.com
ARDC No. 6319396